MICHAEL W. MALTER, #96533
DAVID B. RAO, #103147
Binder & Malter, LLP
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408)295-1700
Facsimile: (408) 295-1531
Email: Michael@bindermalter.com

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, DIVISION 5

| | |
|---|---|
| In re<br><br>GEORGE EARL WEISEL, dba ONE CALL PROPERTY SERVICE and ANGELINA CECILIA WEISEL,<br><br>Debtors. | Case No. 09-56955-RLE<br><br>Chapter 13<br><br>DATE: September 16, 2010<br>TIME: 2:00 p.m.<br>ROOM: 3099 |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VALUE COLLATERAL AND AVOID LIEN

COMES NOW Debtors George Earl Weisel and Angelina Cecilia Weisel and submit their Memorandum of Points and Authorities in Support of Motion to Value Collateral and Avoid Lien of CitiMortgage, Inc. as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

<u>LEGAL ARGUMENT</u>

1. <u>Overview</u>

Rule 3012 of the Federal Rules of Bankruptcy Procedure deals with the procedure in the valuation of a secured claim. It reads in pertinent part: "The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest ..." As the Debtors in the present case,

George Earl Weisel and Angelina Cecilia Weisel are parties in the present case, George Earl Weisel and Angelina Cecilia Weisel are parties "in interest" within the meaning of F.R.B.P. 3012 and may therefore assert their rights to present this motion to the court.

Bankruptcy Code Section 506(a)(1) states that an allowed claim secured by a valid lien on certain property is secured to the extent of "the value of such creditor's interest in the estate's interest in such property." In interpreting this section, the Supreme Court has equated the quoted language with "value of the collateral." See <u>United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.</u>, 484 U.S. 365 (1988).

Section 506(a)(1) provides a flexible, case-by-case standard under which the court should determine the value of collateral "in light of the purpose of the valuation and of the property disposition or use of such property..." This standard suggests that the court's determination of the collateral's "market value" is a function of both the debtor's proposed use of the collateral and the procedural contest of the bankruptcy case. Therefore, as is the case herein, if a Chapter 13 debtor proposes to retain the collateral under their plan, a court evaluating the debtors' plan should value the collateral based on its "replacement value" —i.e., the price that it would cost the debtor to purchase similar property in a market transaction. 11 U.S.C. Section 506(2)(2). See <u>Associates Commercial Corp. v. Rash</u>, 520 U.S. 953 (1997), which held that the replacement value is the appropriate measure in the contest of a Chapter 13 debtor's proposal to retain collateral over the objection of a secured party. Here, the Debtors claimed a market value for their home of $468,500.00 based upon a report from Zillow.com and upon their personal knowledge as the Property owners.

11 U.S.C. Section 1322(b)(2) provides that a chapter 13 plan may: "modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence, ...**" (emphasis

added). In this case, James Parivash, Effat Parivash and New Englasd Glass & Door, Inc. (hereinafter the "Lienholders") hold an Abstract of Judgment against the Debtors' principal residence. Notwithstanding, a chapter 13 plan may utilize section 1322 section 1322(b)(2) to modify and "strip" a junior lien from a principal residence where the Court, pursuant to a value determination under section 506(a), determines the value of the residence is less than the amount owed to senior lienholders, and that the junior creditor's lien, thus, is wholly unsecured. See, <u>Zimmer v. PSB Lending Corp.</u>, (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002); <u>Lam v. Investors Thrift</u>, (In re Lam), 211 B.R. 36 (9th Cir. BAP 1997). In this case, the evidence establishes that CitiMortgage, Inc. is a wholly unsecured creditor.

2. <u>Debtors are Entitled to File Their Chapter 13 Case and To Confirm a Chapter 13 Plan</u>.

The Debtors' receipt of a discharge in their Chapter 7 case precludes any discharge in this case. 11 U.S.C. section 1328(f). The Debtors' inability to obtain a discharge, however, does not bar the filing of their chapter 13 case. See, *Johnson v. Home St. Bank*, 501 U.S. 78, 87 (1991); *In re Bateman*, 515 F3d. 272, 281 (4th Cir. 2008). And the prior discharge of Debtors' personal liability to Lienholders does not limit Debtors' ability to include Lienholders' *in rem* claim in their chapter 13 Plan. *Johnson*, 501 U.S. at 81-87. Thus, in cases involving a prior discharge, a chapter 13 plan may be confirmed if it otherwise meets the confirmation requirements of section 1325. *Johnson*, 501 U.S. at 87-88; *In re Sanders*, 368 B.R. 634, 640 (Bankr. E.D., Mich. 2007).

In *In re Picht*, 2009 w.l. 1766820 (Bankr. D. Kan. 2009), the Bankruptcy Court analyzed related issues and determined that discharge was not required prior to a lien strip. The *Picht* Court analyzed the availability of a section 1322(b((2) lien strip in a

non-discharge case involving an under-secured claim.[1] The junior mortgage holder alleged that sections 1325(a)(5) and 1328(f) barred the lien strip because a discharge was unavailable. *Picht*, 2009 WL 1766820, at p. 2. The *Picht* Court found these arguments unavailing. Holding that "discharge is not a necessary predicate to require the Bank to release its lien" the Court noted that section 1325(a)(5)(B) requires retention of the lien until the underlying debt - - as determined under non-bankruptcy law - - is paid in full or discharged under section 1328, but also required lien retention upon dismissal or conversion without completion of the plan. *Picht*, 2009 WL 1766820 at p. 3. The *Picht* Court found it significant that plan completion - - separate and apart from receiving a discharge - - is a "trigger to satisfaction of the creditors' lien." *Picht*, 2009 WL 1766820 at p. 5. The *Picht* decision thus supports the conclusion that where the creditor receives an appropriate payment - - even zero in a Chapter 13 case following the entry of a discharge in a prior Chapter 7 if the junior mortgage is wholly unsecured - - the lien strip is final upon plan completion notwithstanding the unavailability of a discharge.

In re Jarvis, 390 B.R. 600 (Bankr. C.D. Ill. 2008): The Jarvis case is a non-binding bankruptcy court decision that is distinguishable from the case at bar in one critical aspect. In Jarvis, the debtor sought an <u>immediate</u> order stripping off the unsecured deed of trust from his residence upon confirmation of his Chapter 13 Plan. To that end, the debtor's plan contained the following provision: "As such claim is fully unsecured, the claim of Heartland Credit Union is void with respect to 11 U.S.C. Section 506(d) and such security interest <u>is hereby stripped off upon confirmation of Debtor's Plan.</u>" Jarvis, 390 B.R. at 602 (emphasis added). In contradistinction to the language in the Jarvis plan, the Debtors in the case at bar seek to strip off the unsecured deed of trust of GreenPoint Mortgage Funding, Inc., et al. contingent upon completion of all

---

[1] The *Picht* Court found that section 1322(b9(2) did not bar a lien strip on the Debtor's residence because the loan was initially secured by collateral in addition to a lien on Debtor's residence.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO VALUE COLLATERAL AND AVOID LIEN - PAGE 4

payments required under their Chapter 13 plan. (See Prayer for Relief, paragraph 2 on page 3 of the Debtors' Motion to Value Collateral and Avoid Lien.)

The court's rationale in <u>Jarvis</u> for denying the debtor's attempt to lien strip was that "such modification has traditionally only been achieved through a discharge. ... [but not where] a case is dismissed or converted." <u>Jarvis</u>, 390 B.R. at 606. While that statement is technically correct, it is equally true that lien stripping has traditionally - - in pre-BAPCPA cases - - only been achieved through completion of the debtor's Chapter 13 plan payments. Prior to the passage of BAPCPA, a debtor, even a debtor who filed a Chapter 13 bankruptcy following receipt of a Chapter 7 discharge, was entitled to receive a discharge upon completion of his Chapter 13 plan. Therefore, any dicta in pre-BAPCPA cases about lien stripping being "contingent upon receiving a discharge" is irrelevant to post-BAPCPA cases because discharge was automatic in those earlier cases, so long as the Debtor completed his plan. Such pre-BAPCPA cases are cited in <u>Jarvis</u> at page 604. All are distinguishable from the case at bar for the reason stated above. For that reason, the <u>Jarvis</u> court's reliance on those cases is unjustified.

In re Lilly, 378 B.R. 232 (Bankr. C. D. Ill. 2007): The <u>Lilly</u> case is a non-binding bankruptcy court decision which is distinguishable from the case at barr because it dealt with whether or not a Chapter 13 plan filed by a debtor in a no-discharge Chapter 13 case could permanently modify the interest rate payable on a 910 car claim. Moreover, the <u>Lilly</u> case is distinguishable because, unlike in the case at barr, in <u>Lilly</u> the secured creditor objected to confirmation of the debtor's plan. In addition, although this fact was not expressly stated by the court, it appears that the 910 car claim was incurred by the debtor between the filing of her Chapter 7 and Chapter 13 Petitions. The only reference in <u>Lilly</u> to the time period in which the debtor purchased the vehicle is found at page 233 where the court states that "AFS holds a claim secured by a 2005 Chrysler Sebring that the Debtor purchased within 910 days of the filing of the petition." <u>Lilly</u>, 378 B.R. at 233. However, upon reviewing the objection of AmeriCredit Financial

Services, Inc. to confirmation of the debtor's proposed Chapter 13 plan, filed on February 15, 2007, we see that the debtor filed her Chapter 7 petition on June 14, 2004, purchased the vehicle on June 28, 2006, and filed her Chapter 7 petition on January 3, 2007. The fact that the 910 car claim did not exist when the debtor filed her Chapter 7 petition and therefore was not subject to the debtor's Chapter 7 discharge makes Lilly inapposite to the case at bar. That fact aside, the concept of lien stripping of wholly unsecured junior deeds of trust - - which expressly applies only to junior deeds of trust on a debtor's principal residence - - has no applicability whatsoever to the issue to whether or not a debtor can modify the interest rate on a car loan. Such loans, as in the Lilly case, are typically the only lien on a debtor's vehicle and can therefore never be wholly unsecured.

In re Gounder, 266 B.R. 879 (Bankr. E.D. Cal. 2001): The Gounder case is a non-binding pre-BAPCPA case. The pertinent facts in Gounder were that the debtors filed a Chapter 7 petition, received a discharge, filed a Chapter 13 plan in which they stripped off the wholly unsecured deed of trust recorded by Real Time Solutions, Inc., and then objected to the unsecured Proof of Claim filed by the creditor. The court overruled the debtors' objection to claim and held that the creditor is entitled to be paid as an unsecured claim along with other unsecured claims through the debtors' Chapter 13 plan, notwithstanding the fact that the debtors' personal liability to the claimant had been discharged in their Chapter 7 case. Gounder 266 B.R. at 881.

In re Julie Bollerud, case no. 08-12177 dated June 1, 2009, an unpublished decision by Judge Laura S. Taylor of the U.S. Bankruptcy Court for the Southern District of California:

This non-binding decision is exactly on point with the case at bar. There, Judge Taylor concluded that a debtor in a non-discharge Chapter 13 case can lien strip an unsecured deed of trust, so long as the debtor completes all payments required under her plan. An important consideration in the Bollerud case was that the creditor did not

object to confirmation of the debtor's plan and did not oppose the lien strip motion. Likewise, in the present case, Lienholders did not object to the Debtors' plan.

## CONCLUSION

For the foregoing reasons, and based upon the legal arguments and facts set forth in this Motion and the Declaration of George Weisel filed herewith, Debtors request the Court grant the Motion to Value Collateral and Avoid Lien.

Dated: August 12, 2010
BINDER & MALTER, LLP

By: /s/ Michael W. Malter
Michael W. Malter
Attorney for Debtors

F:\Clients\Weisel, George & Angelina\Pleading\Lien Avoidance\Parivash, James\Points and Authorities.wpd